OCEANIC STEAM NAV. CO., Limited, v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 217.

ALIENS ⬡⟹53—DEPORTATION—EXPENSE OF.

Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899, provided that the importation of any alien female for immoral purposes is forbidden, and whoever shall directly or indirectly import or attempt to import into the United States any alien woman for immoral purposes, or who shall hold or attempt to hold any alien woman for any such purpose, and whoever shall maintain any immoral resort frequented by any alien woman within three years after she shall have entered the United States, shall be deemed guilty of a felony, while the alien woman shall be deported. In 1910 (Act March 26, 1910, c. 128, § 2, 36 Stat. 264 [Comp. St. 1913, § 4247]), the section was amended, so as to declare that any alien who shall be found an inmate or connected with the management of an immoral resort, or who shall share in, receive, or derive benefit from any of the earnings of any prostitute, shall be deemed to be unlawfully within the United States, and shall be deported. Section 20 (section 4269) declares that any alien who shall enter the United States in violation of law and become a public charge, from causes existing prior to landing, shall be deported to the country whence he came at any time within three years after the date of his entry, and that the expense of deporting the alien from the port of deportation shall be borne by the owner or owners of the vessel or transportation line by which the alien came. Held that, in view of the amendment to section 3, the three-year period fixed by section 20 must be disregarded, and a steamship company which brought an alien to the country is liable after the expiration of the three-year period for the expense of his deportation, where he was guilty of sharing the earnings of a prostitute.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬡⟹53.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States of America against the Oceanic Steam

Navigation Company, Limited. There was a judgment for the United States, and defendant brings error. Affirmed.

Burlingham, Montgomery & Beecher, of New York City (R. R. Allen, of New York City, of counsel), for plaintiff in error.

H. Snowden Marshall, U. S. Atty., of New York City (H. A. Content, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. April 19, 1910, Nicola Compagna entered the United States on one of the defendant's vessels. December 19, 1914, he was arrested upon a warrant of the Secretary of Labor on the ground that he was sharing in the earnings of a prostitute; and March 16, 1915, after a hearing, was ordered to be deported at the expense of the defendant. The defendant having refused to accept him as a passenger unless his fare were paid, the government paid the same under protest and brought this action to recover the amount, with costs. The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and, the demurrer having been overruled, judgment was entered for the United States and this writ of error taken.

It will be seen that a pure question of law is presented, involving the construction of section 3 of the Immigration Act of February 20, 1907, as amended March 26, 1910, in conection with sections 20 and 21 of the same act. Section 3 was as follows:

"Sec. 3. That the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien woman or girl for the purpose of prostitution, or for any other immoral purpose, or whoever shall hold or attempt to hold any alien woman or girl for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, or harbor in any house or other place, for the purpose of prostitution, or for any other immoral purpose, any alien woman or girl, within three years after she shall have entered the United States, shall, in every such case, be deemed guilty of a felony, and on conviction thereof be imprisoned not more than five years and pay a fine of not more than five thousand dollars; and any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections 20 and 21 of this act."

March 26, 1910, it was amended to read:

"Sec. 3. That the importation into the United States of any alien for the purpose of prostitution or for any other immoral purpose is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien for the purpose of prostitution or for any other immoral purpose, or whoever shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, employ, or harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien, shall, in every such case be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. Jurisdiction for

the trial and punishment of the felonies hereinbefore set forth shall be in any district to or into which said alien is brought in pursuance of said importation by the person or persons accused, or in any district in which a violation of any of the foregoing provisions of this section occur. Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute, shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections twenty and twenty-one of this act. That any alien who shall, after he has been debarred or deported in pursuance of the provisions of this section, attempt thereafter to return to or to enter the United States shall be deemed guilty of a misdemeanor, and shall be imprisoned for not more than two years. Any alien who shall be convicted under any of the provisions of this section shall, at the expiration of his sentence, be taken into custody and returned to the country whence he came, or of which he is a subject or a citizen in the manner provided in sections 20 and 21 of this act. In all prosecutions under this section the testimony of a husband or wife shall be admissible and competent evidence against a wife or husband."

The amendment material in this case was the striking out of the three-year limitation.

Section 20 reads:

"That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall, upon the warrant of the Secretary of * * * Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States. Such deportation, including one-half of the entire cost of removal to the port of deportation, shall be at the expense of the contractor, procurer, or other person by whom the alien was unlawfully induced to enter the United States, or, if that cannot be done, then the cost of removal to the port of deportation shall be at the expense of the 'immigrant fund' provided for in section 1 of this act, and the deportation from such port shall be at the expense of the owner or owners of such vessel or transportation line by which such aliens respectively came."

Section 21 (Comp. St. 1913, § 4270) adds nothing and need not be considered.

There were in the act of 1907 at the time of the amendment of March 26, 1910, only three sections in which any period for deportation was fixed, to wit, sections 3, 20, and 21; and the period fixed for all cases of deportation was the same, viz., three years from the date of entry. The "manner" in which the deportation should be effected was regulated by section 20, and was the same for all cases, viz., under a warrant of the Secretary of Labor, one-half the costs of removal to the port of deportation to be at the expense of the person by whom the alien was unlawfully induced to enter, and the whole cost of deportation from that port to be at the expense of the owners of the vessel by which the alien originally came. The intent of Congress evidently was that the vessel owners should return at their expense from the port of deportation all aliens unlawfully here whom they had brought to this country. When, therefore, the time limit for deportation of this particular class of aliens was removed, and they were ordered to be deported "in the manner provided in section 20," we

232 F.—38

think the three-year period therein mentioned was to be disregarded for all purposes. There is no reason to suppose that Congress intended to make the extent of the vessel owner's liability different as to that class from their liability as to any other class of aliens to be deported. In other words, this particular class is to be deported at any time from the port of deportation at the expense of the owners of the vessel which brought them in.

The judgment is affirmed.